**FILED *EX PARTE* UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ **07-**Civ-**22674**

DELL INC.; AND ALIENWARE CORPORATION,

    Plaintiffs,

      vs.

BELGIUMDOMAINS, LLC; CAPITOLDOMAINS, LLC; DOMAINDOORMAN, LLC; NETRIAN VENTURES LTD.; IHOLDINGS.COM, INC.; JUAN PABLO VAZQUEZ a/k/a JP VAZQUEZ, an individual; and DOES 1-10;

    Defendants.

**CIV-LENARD** '/TORRES



FILED by _____ D.C.
INTAKE

OCT 1 0 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR *EX PARTE* SEIZURE ORDER, ACCELERATED DISCOVERY,
AND AN ORDER SEALING THE FILE**

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ....................................................................................................... 1

II.   PLAINTIFFS HAVE SHOWN THEIR ENTITLEMENT TO THE REQUESTED
      RELIEF ..................................................................................................................... 3

      A.    Plaintiffs Have Demonstrated a Substantial Likelihood of Success on the
            Merits of Their Claims for Counterfeiting and Cybersquatting and Are
            Thus Entitled to an *Ex parte* Temporary Restraining Order and a
            Preliminary Injunction ..................................................................................... 3

      B.    Plaintiffs Are Entitled to an *Ex parte* Seizure Order Under the Trademark
            Counterfeiting Act ............................................................................................ 4

            1.    An Order Other Than an *Ex parte* Seizure Order Is Not Adequate
                  to Achieve the Purposes of 15 U.S.C. § 1114 (15 U.S.C.
                  § 1116(d)(4)(B)(i)) ................................................................................ 5

                  a)    Defendants, and Persons Involved in Similar Activities,
                        Have Concealed Evidence in the Past.............................................. 5

                  b)    Persons Involved in Similar Activities Have Disregarded
                        Court Orders in the Past, and Defendants Have Continued
                        Their Massive Cybersquatting Despite Countless
                        Objections from Numerous Trademark Owners............................... 7

            2.    Plaintiffs Have Not Publicized the Requested Seizure (15 U.S.C.
                  § 1116(d)(4)(B)(ii)) ............................................................................. 10

            3.    Plaintiffs Are Likely to Succeed in Showing That Defendants Used
                  a Counterfeit Mark in Connection With the Sale, Offering for Sale,
                  or Distribution of Goods And Services (15 U.S.C.
                  § 1116(d)(4)(B)(iii)) ............................................................................ 10

            4.    An Immediate and Irreparable Injury Will Occur if the Requested
                  Seizure Is Not Ordered (15 U.S.C. § 1116(d)(4)(B)(iv)) ........................ 10

            5.    The Matter to Be Seized Will Be Located at the Place Identified in
                  the Motion (15 U.S.C. § 1116(d)(4)(B)(v)) .............................................. 11

            6.    The Harm to Plaintiffs of Denying the Motion Outweighs the
                  Harm to the Legitimate Interests, If Any, of Defendants (15 U.S.C.
                  § 1116(d)(4)(B)(vi)) ............................................................................. 12

            7.    Defendants Are Likely to Destroy, Move, Hide or Otherwise Make
                  Such Evidence Inaccessible to The Court if Plaintiffs Gave Notice
                  to Defendants (15 U.S.C. § 1116(d)(4)(B)(vii)) ...................................... 13

C.   Plaintiffs Have Complied With Other Requirements of the Trademark Counterfeiting Act ...................................................................................... 13

D.   The Affirmative Relief of a Records Seizure Is Available in the Alternative Under the Lanham Act and State Law for Non-Counterfeit Trademark Infringement ...................................................................................... 14

E.   The Court Should Order Accelerated Discovery To Allow Plaintiffs To Ascertain The Identities Of All Persons Engaged In Defendants' Scheme So They Can Be Named As Parties ........................................................................ 15

F.   The File in this Action Should Be Temporarily Sealed to Ensure the Court's Seizure Order Can Be Effectively Implemented ...................................... 17

G.   A Bond, If Required At All, Should Be Minimal .................................................. 18

III.   CONCLUSION............................................................................................................ 19

## TABLE OF AUTHORITIES

PAGE(S)

### CASES

*AT&T Broadband v. Tech Commc'ns, Inc.,*
    381 F.3d 1309 (11th Cir. 2004) ..................................................................................4

*Ayyash v. Bank Al-Madina,*
    223 F.R.D. 325 (S.D.N.Y. 2005) ..............................................................................11

*Electrics Boutique Holdings Corp. v. Zuccarini,*
    2000 U.S. Dist. LEXIS 15719 (E.D. Pa. Oct. 30, 2000)...........................................6

*FTC v. John Zuccarini,*
    2002 U.S. Dist. LEXIS 13324 (E.D. Pa. Apr. 10, 2002) ...........................................6

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen,*
    548 F. Supp. 248 (S.D. Fla. 1982) ...........................................................................11

*New York. Telegraph Co.,*
    434 U.S. at 172........................................................................................................10

*Pepe, Ltd. v. Ocean View Factory Outlet Corp.,*
    770 F. Supp. 754 (D.P.R. 1991)...............................................................................10

*Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liability Co.,*
    204 F.R.D. 675 (D. Colo. 2002) ..............................................................................11

*Semitool, Inc. v. Tokyo Electron America, Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002)..............................................................................11

*Tommy Hilfiger Licensing Inc. v. Nautical Apparel Inc.,*
    924 F. Supp. 17 (S.D.N.Y. 1996) ..............................................................................7

*U.S. v. New York Telegraph Co.,*
    434 U.S. 159 (1977)...................................................................................................8

*In re Vuitton,*
    606 F.2d 1 (2d Cir. 1979)......................................................................................6, 10

### STATUTES

15 U.S.C. § 1114............................................................................................1, 3, 10, 13

15 U.S.C. § 1114(1) ..............................................................................................................3

15 U.S.C. § 1116 ...................................................................................................................3

15 U.S.C. § 1116(a) ..............................................................................................................3

15 U.S.C. § 1116(d)(1) ................................................................................................1, 3, 13

15 U.S.C. § 1116(d)(2). ......................................................................................................10

15 U.S.C. § 1116(d)(4)) ..........................................................................................1, 3, 7, 8, 0

15 U.S.C. § 1116(d)(5) ...........................................................................................................9

15 U.S.C. § 1116(d)(8) .........................................................................................................12

15 U.S.C. § 1116(d)(10) ...................................................................................................9, 11

15 U.S.C. §§1125(d)(1) .........................................................................................................6

28  U.S.C. § 1651 .......................................................................................................1, 10, 13

Fed. R. Civ. P. 26(d) ...........................................................................................................10

Rule 26(f)    ...........................................................................................................................10

Fed. R. Civ. P. 65.......................................................................................................1, 3, 10, 13

## MISCELLANEOUS

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:34 (4th
    ed. 2007) .................................................................................................................6

S. Rep. No. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627....................................6

*Closing the Door on Pervasive Smut*: *Hearing on Online Pornography Before the
    Subcommittee on Commerce, Trade, and Consumer Protection of the Comm. on
    Energy and Commerce*, 108th Cong. 15 (2004) .............................................................6

I.    **INTRODUCTION**

Plaintiffs, Dell Inc. ("Dell") and its wholly owned subsidiary, Alienware Corporation ("Alienware") (collectively "Plaintiffs") own the famous and distinctive DELL trade name and trademarks (collectively "the DELL Marks") and the famous and distinctive ALIENWARE trade name and trademarks (collectively "the ALIENWARE Marks"), respectively. The DELL Marks and the ALIENWARE Marks are collectively referred to as the "Plaintiffs' Marks." Plaintiffs operate highly successful online businesses using their domain names dell.com and alienware.com.

Defendants, BelgiumDomains, LLC; CapitolDomains, LLC; DomainDoorman, LLC; Netrian Ventures LTD.; iHoldings.com, Inc.; Juan Pablo Vazquez a/k/a JP Vazquez; and Does 1-10 (collectively "Defendants") operate one of the largest and most nefarious cybersquatting schemes ever seen, having registered and used hundreds of thousands of domain names that are confusingly similar to, and in many cases counterfeits of, famous and well-known trademarks and trade names. Defendants' portfolio of domain names reads like a "who's who" of corporate America, and includes domain names containing a wide variety of famous trademarks and names and variations thereof. In fact, Defendants have registered at least 1,100 domain names confusingly similar to the Plaintiffs' Marks, many of which are also counterfeits of the Plaintiffs' Marks.

To hide their true identities and involvement in these unlawful activities, Defendants have engaged in a long-standing, deliberate, and intricate scheme. Defendants employ numerous shell entities, fictitious businesses, and personal names. Defendants further conceal their true identities and involvement by limiting the period of time each infringing domain name is registered, repeatedly moving domain names from one company to another to avoid having to

1

pay for the domain name, and providing false contact information in various public records and databases, all to avoid detection by Plaintiffs and other trademark owners.

Because of Defendants' elaborate scheme to conceal their identities and activities, it was not until recently—following a months-long investigation of Defendants—that Plaintiffs began to understand the magnitude of Defendants' scheme and the lengths to which Defendants went to hide that scheme. Among other things, Plaintiffs only recently learned of Defendants' relationship to one another and identified more than a dozen aliases that Defendants used or use in connection with their unlawful activities. Even after this lengthy investigation, however, Plaintiffs are still unaware of the full scope of Defendants' scheme and all of the relevant parties and aliases involved.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure; the Lanham Act, 15 U.S.C. § 1114; the Trademark Counterfeiting Act, 15 U.S.C. § 1116(d)(1)(A); and the All Writs Act, 28 U.S.C. § 1651, Plaintiffs seek an *ex parte* order (1) to seize certain items and business records held by Defendants, (2) granting accelerated discovery against Defendants and certain third parties, and (3) temporarily sealing the file for this litigation until Defendants are served with the Court's Order. Plaintiffs have also filed concurrently herewith a motion for *ex parte* temporary restraining order, and a preliminarily injunction upon expiration of the temporary restraining order, enjoining Defendants from registering, using, and trafficking in infringing and counterfeit domain names and from destroying and moving evidence.

As discussed below, the requested relief is necessary to avoid further irreparable harm to Plaintiffs and Plaintiffs' Marks by preventing the loss, destruction, and movement of crucial evidence concerning Defendants' activities, the co-conspirators of Defendants in these illegal activities, and the extent of the damages to Plaintiffs. Further, Defendants are highly likely to

2

destroy evidence or move evidence out of the country if they receive notice of the filing of this action. Plaintiffs will thus be deprived of an effective remedy unless the Court grants the requested *ex parte* seizure order, permits Plaintiffs to take accelerated discovery of Defendants, and temporarily seals this litigation file.

## II.    PLAINTIFFS HAVE SHOWN THEIR ENTITLEMENT TO THE REQUESTED RELIEF

In support of their Motion for an *ex parte* seizure order, Plaintiffs submit this Memorandum, the Declarations of Kate Burns, Arthur Lewis, David J. Steele, and Mimi L. Sall, and a proposed Order. Plaintiffs also rely on their Complaint, their Memorandum of Law in Support of Plaintiff's Motion for *Ex parte* Temporary Restraining Order and a Preliminary Injunction, the contents of the Court's file to date, and such further evidence and argument as may be presented at the hearing on this Motion and their Motion for *Ex parte* Temporary Restraining Order and a Preliminary Injunction.

### A.    Plaintiffs Have Demonstrated a Substantial Likelihood of Success on the Merits of Their Claims for Counterfeiting and Cybersquatting and Are Thus Entitled to an *Ex parte* Temporary Restraining Order and a Preliminary Injunction

Plaintiffs incorporate by reference their Memorandum of Law in Support of Plaintiffs' Motion for *Ex parte* Temporary Restraining Order and a Preliminary Injunction. For the reasons detailed in that Memorandum, Plaintiffs have demonstrated: (1) a substantial likelihood of success on the merits of their claims for counterfeiting and cybersquatting; (2) a substantial threat of irreparable injury if the injunctions are not granted; (3) the threatened injury to Plaintiffs outweighs the harm the injunctions may cause Defendants; and (4) granting the injunctions would not disserve the public interest. Thus, Plaintiffs are entitled to an *ex parte*

temporary restraining order and a preliminary injunction upon expiration of the temporary restraining order.

**B.   Plaintiffs Are Entitled to an _Ex parte_ Seizure Order Under the Trademark Counterfeiting Act**

Plaintiffs seek an order, pursuant to 15 U.S.C. § 1116(d)(1)(A), to seize items and business records kept by Defendants relating to the selection, registration, use, trafficking in, monetizing, release, transfer, assignment, renewal, maintenance, and deletion of the domain names registered and used by Defendants that are counterfeits of Plaintiffs' Marks, and relating to the coordination among various Defendant entities and others for the purpose of engaging in such activities.[1] In their Motion and proposed Order, Plaintiffs have complied with all statutory requirements of the Trademark Counterfeiting Act.[2]

Moreover, as required by 15 U.S.C. § 1116(d)(4)(B), Plaintiffs have established in their Complaint and supporting Memorandum and Declarations that: (i) an order other than an _ex parte_ seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114, which prohibits infringement of federally registered trademarks; (ii) Plaintiffs have not publicized the requested seizure; (iii) Plaintiffs are likely to succeed in showing that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be

---

[1] 15 U.S.C. §1116(d)(1)(A) states in relevant part: "In the case of a civil action arising under [15 U.S.C. § 1114(1)(a)] . . . with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon _ex parte_ application, grant an order under [15 U.S.C. § 1116] pursuant to [15 U.S.C. § 1116(a)] providing for the _seizure_ of goods and counterfeit marks involved in such violation and the means of making such marks, _and records documenting the manufacturer, sale, or receipt of things involved in such violation._" (Emphasis added).

[2] The Trademark Counterfeiting Act imposes the highest standard of procedural protection for defendants. Plaintiffs' Motion also seeks seizure under alternative bases, including Fed. R. Civ. P. 65, the All Writs Act, and under the injunctive provisions of the Lanham Act, all of which impose less stringent procedural protections than the Trademark Counterfeiting Act.

seized will be located at the place(s) identified in the supporting papers; (vi) the harm to Plaintiffs of denying the Motion outweighs the harm to the legitimate interests of Defendants whom seizure would be ordered of granting the Motion; and (vii) Defendants, or persons acting in concert with them, would destroy, move, hide, or otherwise make such matter inaccessible to the Court, if Plaintiffs were to proceed on notice to Defendants. Each of these points is discussed below.

**1.** **An Order Other Than an *Ex parte* Seizure Order Is Not Adequate to Achieve the Purposes of 15 U.S.C. § 1114 (15 U.S.C. § 1116(d)(4)(B)(i))**

*Ex parte* seizures are appropriate where, as here, "providing notice to the defendant would 'render fruitless the further prosecution of the action.'" *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). This can be established by "show[ing] that the defendant, or persons involved in similar activities, had concealed evidence or disregarded court orders in the past." *Id.* (internal punctuation omitted). Although Plaintiffs need only establish one of these elements, as discussed below, Plaintiffs have shown that Defendants or persons involved in similar activities have concealed evidence in the past *and* that Defendants or persons involved in similar activities have disregarded other court orders.

**a)** **Defendants, and Persons Involved in Similar Activities, Have Concealed Evidence in the Past**

Defendants have concealed evidence by using numerous fictitious businesses, personal names, and shell entities to hide their activities. (Declaration of David J. Steele ("Steele Decl."), ¶¶7-9.) For example, Defendants have a documented history of covering up their tracks by simply using a new fictitious name every time they are discovered. (Steele Decl., ¶10 and Exs. C and F.) When trademark owners learn that a particular Defendant entity is cybersquatting, Defendants abandon that entity and create a new one or they transfer the names among their

5

various shell entities to prevent detection by trademark owners. (Steele Decl., ¶12.) The Microsoft Report[3] details at least one example of this practice, where Defendants ceased using the "Unasi" name and began operating under the alias "Domaincar." (Steele Decl., ¶10 and Ex. F.)

The lengths to which Defendants have gone to conceal their identities and activities is best shown by the fact that it has taken Plaintiffs months of vigorous searching to identify some, but not all, of Defendants' fictitious businesses, shell entities, and personal names. (Steele Decl., ¶¶2, 8, 9.) This investigation revealed that even the named corporate Defendants BelgiumDomains, CapitolDomains, and DomainDoorman, which list Florida addresses in their corporate documents, do not have physical places of business at those addresses. (Steele Decl., ¶25.) Moreover, in addition to the numerous fictitious businesses, shell entities, and personal names with foreign addresses, it appears that Netrian Ventures Ltd., the Corporate Manager of BelgiumDomains, CapitolDomains, and DomainDoorman, is an offshore company. (Steele Decl., ¶2.) Defendants are thus ideally placed to simply abscond offshore with their operation and their records.

Further, the justification for an *ex parte* seizure order here is even more compelling than in a typical counterfeiting case involving counterfeit clothing, footwear, DVDs, or software. Whereas in those cases there is typically a substantial amount of tangible evidence in the form of

---

[3] A Microsoft Corporation research team issued a report on typosquatting, titled *Strider Typo-Patrol: Discovery and Analysis of Large-Scale, Systematic Typo-Squatters* (the "Microsoft Report"). A copy of the Microsoft Report is attached to the Steele Declaration as Exhibit F. The purpose of the Microsoft Report is "to discover and investigate questionable websites in order to protect Internet users." The Microsoft Report details what Plaintiffs' independent research also concluded: "almost all of the potential typo-squatting domains reported … are registered to the same company." The "same company" referred to in the report is "Unasi"—one of Defendants' fictitious entities and alter egos. The Microsoft Report was updated in January 2006 and detailed that Defendants changed the fictitious entity it then used from "Unasi" to "Domaincar"—another of Defendants' fictitious entities. (Steele Decl., ¶10 and Ex. C.)

counterfeit goods, counterfeit packaging, and molds or other means for making the counterfeit goods, which could be difficult to destroy or move because the nature or amount of the evidence, the vast majority of evidence of Defendants' cybersquatting scheme in this case is in electronic form and subject to quick, easy, untraceable destruction by Defendants.

Specifically, most if not all of the domain name registration, renewal, and transfer process is done online, i.e., electronically. Moreover, domain name registrants generally receive notifications relating to every aspect of the domain name registration, renewal, and transfer process by email. E-mail is clearly the customary and preferred method of communication for domain name matters. In addition, the process for Defendants receiving payments for advertising clicks and click-throughs on their websites corresponding to the infringing domain names is handled primarily if not exclusively by electronic means. (Steele Decl., ¶23.)

Because the data Plaintiffs need to prosecute their case primarily consists of these massive yet evanescent banks of electronic records, Defendants could destroy it all with just a few keystrokes, leaving no paper trail. The elaborate nature of Defendants' scheme demonstrates that Defendants will go to great lengths to conceal the details of their counterfeiting and cybersquatting scheme. If Defendants learn of this proceeding, there will very likely and very quickly be nothing left.

    **b)**   **Persons Involved in Similar Activities Have Disregarded Court Orders in the Past, and Defendants Have Continued Their Massive Cybersquatting Despite Countless Objections from Numerous Trademark Owners**

Plaintiffs can also demonstrate that persons involved in similar activities have disregarded court orders in the past. Specifically, cybersquatters like Defendants have fled and ignored court orders in the past. One notorious cybersquatter, John Zuccarini, like Defendants in this case, registered thousands of domain names that were misspellings of popular trademarks

7

and used them for similar websites. A trademark owner sued Zuccarini under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §§1125(d)(1), in his home state of Pennsylvania. Zuccarini ignored the proceedings, however, and never satisfied a $500,000 judgment against him. *See Elecs. Boutique Holdings Corp. v. Zuccarini*, 2000 U.S. Dist. LEXIS 15719, at *23 (E.D. Pa. Oct. 30, 2000) (stating "Mr. Zuccarini's failure to respond to this matter forces me to conclude that he willfully avoided service and that he made a conscious choice to allow this matter to proceed in his absence."). Facing mounting cybersquatting litigation from various trademark owners, Zuccarini fled after the Federal Trade Commission ("FTC") brought an action. *See FTC v. John Zuccarini,* 2002 U.S. Dist. LEXIS 13324 (E.D. Pa. Apr. 10, 2002). According to the FTC, Zuccarini was ultimately arrested in a south Florida hotel room surrounded by computer equipment and cash, all of which was seized by criminal authorities.[4]

Moreover, counterfeiters involved in similar activities frequently do not respect orders of the courts: "In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:34 (4th ed. 2007). Professor McCarthy notes that counterfeiters who have no substantial investment in stationary assets will often disappear or dispose of evidence if served with a notice of hearing on preliminary injunction. *See id.* Giving notice of a seizure to counterfeiters "all too often appears to serve only to render fruitless further prosecution of the action" because counterfeiters will quickly dispose of their illegal inventory by giving it to persons unknown to the plaintiff. *See In re Vuitton et Fils, S.A.*, 606 F.2d 1, 2-5 (2d Cir. 1979).

---

[4] *Closing the Door on Pervasive Smut*: *Hearing on Online Pornography Before the Subcommittee on Commerce, Trade, and Consumer Protection of the Comm. on Energy and Commerce*, 108th Cong. 15 (2004) (statement of J. Howard Beales, III, Director, Bureau of Consumer Protection, Federal Trade Commission), *available at* http://www.ftc.gov/os/2004/05/040406onlineporntest.pdf.

Indeed, the passage of the Trademark Counterfeiting Act, providing enhanced procedures for *ex parte* seizure of counterfeit registered marks and associated records, was partly motivated by a congressional finding that "[m]any of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon." S. Rep. No. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627.

Finally, although Plaintiffs do not have any evidence that Defendants have violated any specific court orders in the past, Defendants' continuation of their cybersquatting activities on a massive scale notwithstanding numerous lawsuits and hundreds of administrative proceedings having been filed against them is tantamount to disregarding court orders. First, trademark owners have filed *hundreds* of administrative proceedings under the Uniform Dispute Resolution Policy against Defendants relating to their infringing domain names. (Steele Decl., ¶15 and Ex. K.) Second, at least nine civil lawsuits for cybersquatting have been filed against Defendants, and injunctions were issued against Defendants in at least six of those actions. (Steele Decl., ¶15 and Ex. P.). Despite all of these court and administrative proceedings, Defendants have continued their counterfeiting and cybersquatting. This evidence is precisely the type of evidence to support the request for an *ex parte* seizure.

In sum, any order other than the requested *ex parte* seizure of records is not adequate to protect the evidence and preserve Plaintiffs' right to conduct this case because (a) Defendants have concealed evidence by using many fictitious names and shell entities to hide their activities, (b) other prolific cybersquatters have ignored court orders, (c) counterfeiters have a reputation of avoiding court orders, (d) Defendants have continued their counterfeiting and cybersquatting activities despite numerous lawsuits and hundreds of administrative proceedings having been

9

filed against them, which is tantamount to disregarding court orders, and (e) Defendants could easily destroy their electronic records and evidence in this matter.

**2.      Plaintiffs Have Not Publicized the Requested Seizure (15 U.S.C. § 1116(d)(4)(B)(ii))**

Pursuant to 15 U.S.C. §§ 1116(d)(4)(B)(ii) and 1116(d)(6), Plaintiffs have not publicized the requested seizure. (Declaration of Kate Burns ¶26 and Declaration of Arthur Lewis ¶14. )

**3.      Plaintiffs Are Likely to Succeed in Showing That Defendants Used a Counterfeit Mark in Connection With the Sale, Offering for Sale, or Distribution of Goods And Services (15 U.S.C. § 1116(d)(4)(B)(iii))**

As demonstrated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for *Ex parte* Temporary Restraining Order and a Preliminary Injunction, Plaintiffs are likely to succeed in showing that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services.

**4.      An Immediate and Irreparable Injury Will Occur if the Requested Seizure Is Not Ordered (15 U.S.C. § 1116(d)(4)(B)(iv))**

Courts have interpreted the irreparable injury requirement of 15 U.S.C. § 1116(d)(4)(B)(iv) to be the same as the irreparable harm requirement for granting a temporary restraining order or a preliminary injunction. *See, e.g., Tommy Hilfiger Licensing Inc. v. Nautical Apparel Inc.*, 924 F. Supp. 17, 21 (S.D.N.Y. 1996) ("Paragraph (iv) [of 15 U.S.C. § 1116(d)(4)(B)] is identical to the standard used to grant a temporary restraining order or a preliminary injunction"). Here, as established in Section III.C. of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for *Ex parte* Temporary Restraining Order and a Preliminary Injunction, Plaintiffs will suffer immediate and irreparable harm if the requested relief is not granted.

10

Moreover, Plaintiffs will suffer further irreparable harm if the requested seizure order is not entered because Defendants are highly likely to conceal, destroy, or move evidence, thereby preventing Plaintiffs from learning the full extent of Defendants' counterfeiting activities.

### 5.  The Matter to Be Seized Will Be Located at the Place Identified in the Motion (15 U.S.C. § 1116(d)(4)(B)(v))

Plaintiffs have identified with specificity in the proposed Order the items and records to be seized and the place where they are to be found, i.e., Defendant Vazquez's home address, 11605 S.W. 99th Court, Miami, Florida 33126. Ordinarily, the seizure would also take place at the places of business of the three corporate Defendant Registrars that are registering the domain names. However, as discussed above, Plaintiffs' investigation revealed that the addresses for Defendants BelgiumDomains, LLC, CapitolDomains, LLC, DomainDoorman, LLC are not the actual locations of Defendants' business. Therefore, Plaintiffs are focusing on the home address of Vazquez who conducts the day-to-day operations of Defendants' business. (Steele Decl., ¶7.)

Plaintiffs anticipate that the bulk of the records responsive to the proposed seizure order will include electronic data files. Plaintiffs do not expect to impose that burden of seizing this data on law enforcement personnel. Accordingly, Plaintiffs propose that an expert, highly trained and skilled in computer data forensics, be present at the seizure to conduct the technical data retrieval. Plaintiffs submit to this Court the qualifications of Mr. Jeffrey E. Tuley with the forensic expert firm NetEvidence, Inc. A copy of Mr. Tuley's curriculum vitae and information about NetEvidence, Inc. is attached to the Steele Declaration as Exhibit M. As noted, Mr. Tuley is certified in computer forensic investigations. Mr. Tuley has already provided expert declarations to this Court in other cases (*see, e.g.*, *M & M Aerospace Hardware, Inc. v. Mark R. Heathcock, Peter M. Oleck, and Ascent Aerospace Fastners, L.L.C.*, (S.D. Fla., Miami Div., 2005), among others.

11

It is Plaintiffs' hope that the seizure can be conducted without removing Defendants' computer and data processing equipment from the premises to minimize any disruption to Defendants' business. This would require the forensic data expert to copy or "image" the data from the Defendants' computers while leaving them in place.

A district court has the power to issue a writ of assistance that compels third parties with technical skills to assist in the technical implementation of a court's order. *U.S. v. New York Tel. Co.*, 434 U.S. 159, 176 (1977) (holding valid district court order directing telephone company to provide federal law enforcement officials with facilities and technical assistance). Here, however, all that is likely necessary is this Court's approval to use Mr. Tuley, which will expedite and streamline the data retrieval part of the seizure.

### 6. The Harm to Plaintiffs of Denying the Motion Outweighs the Harm to the Legitimate Interests, If Any, of Defendants (15 U.S.C. § 1116(d)(4)(B)(vi))

Plaintiffs seek to preserve critical evidence for the prosecution of this action. This evidence is likely to be primarily in electronic form, within Defendants' exclusive control, and subject to quick, easy, untraceable destruction. Defendants are highly likely to destroy the evidence or move it out of the country if the seizure is not made. Destruction or moving of the evidence will greatly undermine Plaintiffs' ability to prosecute their case, and cause further irreparable harm to Plaintiffs.

Defendants may suffer some harm from "down time" caused by the seizure. However, Plaintiffs will attempt to conduct the seizure without removing Defendants' computers and equipment from the premises to minimize any disruption to Defendants' business. Plaintiffs have retained outside, neutral, forensic data experts to lessen any possible harm to Defendants. Further, the proposed Order also limits the duration of the seizure to only seven days.

Accordingly, the injury to Plaintiffs if the seizure order is denied will far outweigh the harm the seizure will cause Defendants.

### 7. Defendants Are Likely to Destroy, Move, Hide or Otherwise Make Such Evidence Inaccessible to The Court if Plaintiffs Gave Notice to Defendants (15 U.S.C. § 1116(d)(4)(B)(vii))

The elaborate nature of Defendants' scheme demonstrates that Defendants will go to great lengths to conceal their counterfeiting and cybersquatting scheme. Defendants have a history of concealing evidence by using numerous fictitious businesses, personal names, and shell entities to hide their activities. Moreover, Defendants' corporate manager, Netrian Ventures Ltd., appears to be an offshore entity, and Defendants have used numerous shell entities, fictitious businesses, and personal names with offshore business addresses. As such, Defendants are likely to abscond offshore with their operation and their records or destroy their records if they receive notice. This is especially likely given the electronic nature of the evidence, which is subject to quick, easy, untraceable movement and destruction by Defendants.

### C. Plaintiffs Have Complied With Other Requirements of the Trademark Counterfeiting Act

In addition, the proposed Order submitted by Plaintiffs complies with 15 U.S.C. § 1116(d)(5) by providing: (A) proposed findings of fact and conclusions of law; (B) a particular description of the matter to be seized, and a description of each place at which such matter is to be seized; (C) the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made; (D) the amount of security required to be provided; and (E) a date for the hearing required under 15 U.S.C. § 1116(d)(10). Plaintiffs also have notified the United States Attorney in this judicial district pursuant to 15 U.S.C. § 1116(d)(2). (Declaration of Mimi Sall, ¶2.)

**D.**   **The Affirmative Relief of a Records Seizure Is Available in the Alternative Under the Lanham Act and State Law for Non-Counterfeit Trademark Infringement**

Plaintiffs' Motion and supporting papers establish a compelling case of counterfeiting. However, the availability of the requested relief does not turn on the counterfeiting claim. Rather, all the requested relief may be granted in the alternative under the broad injunctive powers of the Lanham Act, 15 U.S.C. § 1114; the All Writs Act, 28 U.S.C. § 1651; and the inherent power of this Court to fashion equitable remedies.

The passage of the Trademark Counterfeiting Act did not divest this Court of the bases on which it may grant relief overlapping or duplicating the relief authorized by the Act. "Even with the passage of Trademark Counterfeiting Act, seizures of counterfeit goods and documents based upon Fed. R. Civ. P. 65, the All Writs Act, under the injunctive provisions of the Lanham Act or [state] law are appropriate." *Pepe, Ltd. v. Ocean View Factory Outlet Corp.*, 770 F. Supp. 754, 759-60 (D.P.R. 1991) (passage of the Trademark Counterfeiting Act meant to expand, not restrict or pre-empt, existing trademark enforcement powers). Seizures predate the enactment of the Trademark Counterfeiting Act. *See, e.g., In re Vuitton,* 606 F.2d 1. Such seizures outside the scope of the Trademark Counterfeiting Act are also available and appropriate in cases of infringement of registered or unregistered trademarks, even if those infringements do not rise to the level of counterfeiting. *See id.* Further, the United States Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *New York. Tel. Co.* 434 U.S. at 172. Regardless of whether Defendants' activities constitute counterfeiting, this Court has the full power to order the requested seizure.

**E.    The Court Should Order Accelerated Discovery To Allow Plaintiffs To Ascertain The Identities Of All Persons Engaged In Defendants' Scheme So They Can Be Named As Parties**

Plaintiffs seek accelerated pretrial discovery to ascertain the true identities of the parties involved in Defendants' operations and the scope of those operations. The Court has discretion to order accelerated discovery in appropriate cases. The Federal Rules of Civil Procedure provide that parties may not seek discovery prior to the Rule 26(f) scheduling conference, except when authorized by Court order. Fed. R. Civ. P. 26(d).

Courts have adopted a good cause or reasonableness standard for granting expedited discovery. *Ayyash v. Bank Al-Madina*, 223 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting *ex parte* expedited discovery from third parties where plaintiff showed good cause); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying a good cause standard to plaintiff's request for expedited discovery); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (applying a good cause standard to plaintiff's request for expedited discovery). The *Ayyash* court found good cause when the plaintiff showed that the "defendants are foreign individuals and corporations who have both incentive and capacity to hide their assets." *Ayyash*, 223 F.R.D. at 327.

Furthermore, accelerated discovery is specifically contemplated by 15 U.S.C. § 1116(d)(10)(B) of the Trademark Counterfeiting Act, which states "[i]n connection with a [seizure order] hearing . . . the court may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing." Indeed, courts have recognized that accelerated discovery may be particularly appropriate in cases of trademark counterfeiting. "Expedited discovery should be granted when some unusual circumstances or conditions exist that would likely prejudice the

party if he were required to wait the normal time. Such prejudice is frequently the case where a well-known trademark, such as plaintiffs here, has been counterfeited and the sources or purchasers of the counterfeit products are unknown to plaintiff." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 250 (S.D. Fla. 1982) (internal citation omitted).

As explained above, Defendants have taken special precautions to hide their true identities and shield their activities from detection. Even now, after a months-long investigation of Defendants, the technical aspects of their business, and how they hide their identities, Plaintiffs are still unaware of the full scope of Defendants' scheme and all of the parties involved. In this case, discovery on a normal timeline and with notice to Defendants could be fruitless. The extraordinary circumstances of this case constitute good cause for accelerated discovery. Therefore, Plaintiffs request an order from the Court allowing Plaintiffs to immediately serve document requests and interrogatories on Defendants and to shorten the time for Defendants' responses to the document requests from 30 days to 5 business days, and for Defendants' answers to interrogatories from 30 days to 3 business days. In addition, Plaintiffs request an order from the Court allowing Plaintiffs to immediately notice the deposition of Defendants so that the depositions may be taken within 5 business days of notice.

Plaintiffs also seek limited accelerated discovery on the following third parties:

1. Google, Inc.—It appears that Google provides the advertisements to Defendants or their affiliates that are displayed on the websites corresponding to Defendants' infringing and counterfeit domain names, and pays Defendants monies from those advertisements. Accordingly, Google is likely to have discoverable information that will assist Plaintiffs in identifying additional Defendants, and assessing the scope of Defendants' operations and business dealings between any Defendant, or their affiliates.

2. The Internet Corporation for Assigned Names and Numbers ("ICANN")— ICANN has accredited Defendants BelgiumDomains, LLC, CapitolDomains,

LLC, DomainDoorman, LLC, and iHoldings.com, Inc. as domain name registrars. Accordingly, ICANN is likely to have discoverable information obtained during the accreditation process about Defendants and their day-to-day operations, including dealings with Defendant Juan Pablo Vazquez a/k/a JP Vazquez, which may assist Plaintiffs in identifying additional Defendants.

3.  InterServer, Inc.—It appears that InterServer provides the servers and hosts the websites for Defendants. Accordingly, Defendants will have had business dealings with InterServer, which will likely have discoverable information that will assist Plaintiffs in identifying additional Defendants, and discoverable information regarding Defendants' operations and business dealings between any Defendant, or their affiliates.

4.  Dotster, Inc.—It appears that Dotster may have purchased Defendant iHoldings.com, Inc. from Defendants. Accordingly, Defendants will have had business dealings with Dotster, which will likely have discoverable information that will assist Plaintiffs in identifying additional Defendants, and discoverable information regarding Defendants' operations and business dealings between and Defendants, or their affiliates.

5.  Internap Services—It appears that Internap provides the connectivity for the servers for Defendants. Accordingly, Defendants will have had business dealings with Internap, which will likely have discoverable information that will assist Plaintiffs in identifying additional Defendants, and discoverable information regarding Defendants' operations and business dealings between Defendants, or their affiliates, including the location of Defendants' computers and servers that contain relevant evidence.

F.  **The File in this Action Should Be Temporarily Sealed to Ensure the Court's Seizure Order Can Be Effectively Implemented**

As shown above, if Defendants receive advance word of this Motion, they will likely destroy evidence or move it out of the jurisdiction. Plaintiffs therefore request that all papers filed in this action be sealed and not made publicly available until the hearing set by the Court. This will ensure that all seizures against Defendants or associated entities can be carried out without any knowledge by the targets of the seizure. Further, sealing such papers is required by the Trademark Counterfeiting Act for the Defendants' protection. *See* 15 U.S.C. § 1116(d)(8).

17

### G.     A Bond, If Required At All, Should Be Minimal

If this Court believes that Plaintiffs must post a bond to comply with the statute, a minimal bond will suffice. As discussed above, Defendants have no legitimate business interests in trademark counterfeiting and its customer-diversion scheme. Moreover, this Court's order can likely be carried out with only a temporary and limited effect on Defendants' business operations, and Plaintiffs have complied with all the procedural requirements of the Federal Counterfeiting Act. For the brief period from now until the confirming hearing in ten to fifteen days, Defendants' losses from being unable to counterfeit and infringe Plaintiffs' Marks will be *de minimus*. If the Court believes a bond is necessary, Plaintiffs propose an amount of $10,000.

## III.    **CONCLUSION**

Plaintiffs respectfully submit that, pursuant to Rule 65 of the Federal Rules of Civil

Procedure; the Lanham Act, 15 U.S.C. § 1114; the Trademark Counterfeiting Act, 15 U.S.C.

§ 1116(d)(1)(A); and the All Writs Act, 28 U.S.C. § 1651, the Court should grant Plaintiffs'

Motion for *Ex parte* Seizure Order, Order for Accelerated Discovery, and Order Sealing the File

by directing entry of the attached proposed Order.


DATED:  October /9th, 2007                    Respectfully submitted,

                                              By: _____
                                              Mimi L. Sall (Florida Bar No. 436704)
                                              E-mail: msall@swmwas.com
                                              STEARNS WEAVER MILLER WEISSLER
                                              ALHADEFF & SITTERSON, P.A.
                                              200 East Las Olas Boulevard, Suite 2100
                                              Fort Lauderdale, Florida  33301
                                              Tel: (954) 462-9575
                                              Fax: (954) 462-9567

                                              David J. Steele (pro hac vice pending)
                                              Email: david.steele@cph.com
                                              CHRISTIE, PARKER & HALE, LLP
                                              3501 Jamboree Road
                                              Suite 6000 - North Tower
                                              Newport Beach, CA  92660
                                              Tel.: 949-476-0757
                                              Fax: 949-476-8640

                                              Email: howard.kroll@cph.com
                                              CHRISTIE, PARKER & HALE, LLP
                                              350West Colorado Boulevard, Suite 500
                                              Pasadena, CA 91105
                                              Tel.: 626-795-9900
                                              Fax: 626-577-8800

19