Unsealed NOV 1 6 2007

**FILED *EX PARTE* UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ 07-22674

*SEALED*

DELL INC.; AND ALIENWARE CORPORATION,

    Plaintiffs,

vs.

BELGIUMDOMAINS, LLC; CAPITOLDOMAINS, LLC; DOMAINDOORMAN, LLC; NETRIAN VENTURES LTD.; IHOLDINGS.COM, INC.; JUAN PABLO VAZQUEZ a/k/a JP VAZQUEZ, an individual; and DOES 1-10;

    Defendants.

CIV-LENARD JORDAN

TORRES

_____

## PROPOSED ORDER

## GRANTING PLAINTIFFS' MOTION FOR *EX PARTE* SEIZURE ORDEACCELAERATED DISCOVERY, AND ORDER SEALING THE FILE

    This matter comes before this Court following Plaintiffs, Dell Inc.'s ("Dell") and its wholly owned subsidiary, Alienware Corporation's ("Alienware") (collectively "Plaintiffs"), filing of a motion for an *ex parte* seizure order, accelerated discovery, and an order sealing the file. Pursuant to Rule 65 of the Federal Rules of Civil Procedure; the Lanham Act, 15. U.S.C. § 1114; the Trademark Counterfeiting Act, 15 U.S.C. § 1116(d)(1)(A); and the All Writs Act, 28 U.S.C. § 1651, and based upon the evidence submitted and the arguments made by Plaintiffs, the Court makes the following Finding of Facts and Conclusions of Law.

## I.     FINDINGS OF FACT

1.     This Court has made extensive Findings of Fact in its Order Granting Plaintiffs' Motion for Ex Parte Temporary Restraining Order and a Preliminary Injunction, which is incorporated by reference in its entirety.

## II.    CONCLUSIONS OF LAW

### A.     Plaintiffs are Entitled to an Ex Parte Seizure Order Under the Trademark Counterfeiting Act

1.     Plaintiffs seek an order, pursuant to 15 U.S.C. § 1116(d)(1)(A), to seize items and business records kept by Defendants relating to the selection, registration, use, trafficking in, monetizing, release, transfer, assignment, renewal, maintenance, and deletion of the domain names registered and used by Defendants that are counterfeits of Plaintiffs' Marks, and relating to the coordination among various Defendants and their shell entities, fictitious businesses, and personal names and others for the purpose of the engaging in such activities.

2.     As required by 15 U.S.C. § 1116(d)(4)(B), Plaintiffs have established that: (i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114, which prohibits infringement of federally registered trademarks; (ii) Plaintiffs have not publicized the requested seizure, (iii) Plaintiffs are likely to succeed in showing that the Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the harm to Plaintiffs of denying the Motion outweighs the harm to the legitimate interests of Defendants whom seizure would be ordered by granting the Motion; and (vii) Defendants, or persons acting in concert with them, would destroy, move, hide, or otherwise make such matter inaccessible to the Court, if Plaintiffs were to proceed on notice to Defendants.

**1.**   **An Order Other Than an *Ex Parte* Seizure Order is Not Adequate to Achieve the Purposes of 15 U.S.C. § 15 U.S.C. § 1114 (15 U.S.C. § 1116(d)(4)(B)(i)**

3.     *Ex parte* seizures are appropriate where, as here, "providing notice to the defendant would 'render fruitless the further prosecution of the action.'" *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004).   This can be established by "show[ing] that the defendant, or persons involved in similar activities, had concealed evidence or disregarded court orders in the past." *Id.* (internal punctuation omitted).   Although Plaintiffs need only establish one of these elements, Plaintiffs have shown that Defendants or persons involved in similar activities have concealed evidence in the past *and* that Defendants or persons involved in similar activities have disregarded other court orders.

4.     Defendants have concealed evidence by using numerous fictitious businesses, personal names, and shell entities to hide their activities.   For example, Defendants have a documented history of covering up their tracks by simply using a new fictitious name every time they are discovered.   When trademark owners learn that a particular Defendant entity is cybersquatting, Defendants abandon that entity and create a new one or they transfer the names among their various shell entities to prevent detection by trademark owners.

5.     The named corporate Defendants BelgiumDomains, CapitolDomains, and DomainDoorman, which list Florida addresses in their corporate documents, do not have physical places of business at those addresses.   Moreover, in addition to the numerous fictitious businesses, shell entities, and personal names with foreign address, it appears that Netrian Ventures Ltd., the Corporate Manager of BelgiumDomains, CapitalDomains, and DomainDoorman, is an offshore company.   Defendants are thus ideally placed to simply abscond offshore with their operation and their records.

6.      The justification for an *ex parte* seizure order here is even more compelling than in a typical counterfeiting case involving counterfeit clothing, footwear, DVDs, or software. Whereas in those cases there is typically a substantial amount of tangible evidence in the form of counterfeit goods, counterfeit packaging, and/or the means for making the counterfeit goods, which could be difficult to destroy or move because the nature or amount of the evidence, the vast majority of evidence of Defendants' cybersquatting scheme in this case is in electronic form and subject to quick, easy, untraceable destruction by Defendants.

7.      Specifically, most if not all of the domain name registration, renewal, and transfer process is done online, i.e., electronically.  In addition, the process for Defendants receiving payments for advertising clicks and click-throughs on their websites corresponding to the infringing domain names is handled primarily if not exclusively by electronic means. Defendants thus could destroy this evidence all with just a few keystrokes, leaving no paper trail. The elaborate nature of Defendants' scheme demonstrates that Defendants will go to great lengths to conceal the details of their counterfeiting and cybersquatting scheme.  If Defendants learn of this proceeding, there will very likely and very quickly be nothing left.

8.      Plaintiffs have also demonstrated that some persons involved in similar activities have disregarded court orders in the past.  Specifically, cybersquatters like Defendants have fled and ignored court orders in the past.  One notorious cybersquatter, John Zuccarini, like Defendants in this case, registered thousands of domain names that were misspellings of popular trademarks and used them for similar websites.  A trademark owner sued Zuccarini under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1), in his home state of Pennsylvania.  Zuccarini ignored the proceedings, however, and never satisfied a $500,000 judgment against him. *See Elecs. Boutique Holdings Corp. v. Zuccarini*, 2000 U.S.

4

Dist. LEXIS 15719, at *23 (E.D. Pa. Oct. 30, 2000) (stating "Mr. Zuccarini's failure to respond to this matter forces me to conclude that he willfully avoided service and that he made a conscious choice to allow this matter to proceed in his absence."). Facing mounting cybersquatting litigation from various trademark owners, Zuccarini fled after the Federal Trade Commission ("FTC") brought an action. *See FTC v. John Zuccarini,* 2002 U.S. Dist. LEXIS 13324 (E.D. Pa. Apr. 10, 2002). According to the FTC, Zuccarini was ultimately arrested in a south Florida hotel room surrounded by computer equipment and cash, all of which was siezed by criminal authorities. *Closing the Door on Pervasive Smut Hearing on Online Pornography Before the Subcommittee on Commerce, Trade, and Consumer Protection of the Commm. On Energy and Commerce*, 108th Cong. 15 (2004) (statement of J. Howard Beales, III, Director, Bureau of Consumer Protection, Federal Trade Commission), *available at* http://www.ftc.gov/os/2004/05/040406onlineporntest.pdf.

9.     Moreover, counterfeiters involved in similar activities frequently do not respect orders of the courts: "In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:34 (4th ed. 2007). Professor McCarthy notes that counterfeiters who have no substantial investment in stationary assets will often disappear or dispose of evidence if served with a notice of hearing on preliminary injunction. *See id.* Giving notice of a seizure to counterfeiters "all too often appears to serve only to render fruitless further prosecution of the action" because counterfeiters will quickly dispose of their illegal inventory by giving it to persons unknown to the plaintiff. *See In re Vuitton et Fils, S.A.,* 606 f.2D 1, 2-5 (2d Cir. 1979). The passage of the Trademark Counterfeiting Act, providing enhanced procedures for ex parte seizure of counterfeit registered marks and associated records, was partly

motivated by a congressional finding that "[m]any of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon." S. Rep. No. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N.3627.

10.     Trademark owners have filed *hundreds* of administrative proceedings under the Uniform Dispute Resolution Policy ("UDRP") against Defendants relating to their infringing domain names. At last nine civil lawsuits for cybersquatting have been filed against Defendants, and injunctions were issued against Defendants in at least six of those actions. Although there is presently no evidence that Defendants have violated any specific court orders in the past, Defendants' continuation of its cybersquatting activities on a massive scale notwithstanding numerous lawsuits and hundreds of UDRP proceedings having been filed against them is tantamount to disregarding court orders.

11.     In sum, any order other than the requested *ex parte* seizure of records is not adequate to protect the evidence and preserve Plaintiffs' right to conduct this case because (a) Defendants have concealed evidence by using many fictitious names and shell entities to hide their activities, (b) other prolific cybersquatters have ignored court orders, (c) counterfeiters have a reputation of avoiding court orders, (d) Defendants have continued their counterfeiting and cybersquatting activities despite numerous lawsuits and hundreds of UDRPs having been filed against them, which is tantamount to disregarding court orders, and (e) Defendants could easily destroy their electronic records and evidence in this matter.

### 2. Plaintiffs Have Has Not Publicized the Requested Seizure (15 U.S.C.. § 116(d)(4)(B)(ii))

12.     Pursuant to 15 U.S.C. §§ 111(d)(4)(B)(ii) and 1116(d)(6), Plaintiffs have not publicized the requested seizure.

> **3.    Plaintiffs Are Likely to Succeed in Showing That Defendants Used a Counterfeit Mark in Connection With the Sale, Offering for Sale, or Distribution of Goods And Services (15 U.S.C. § 1116(d)(4)(iii)**

13.    As demonstrated in Section III.B of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and a Preliminary Injunction, Plaintiffs are likely to succeed in showing that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services.

> **4.    An immediate and Irreparable Injury Will Occur if the Requested Seizure Is Not Ordered (15 U.S.C. § 1116(d)(4)(B)(iv))**

14.    Courts have interpreted the irreparable injury requirement of 15 U.S.C. § 1116(d)(4)(B)(iv) to be the same as the irreparable harm requirement for granting a temporary restraining order or a preliminary injunction. *See, e.g., Tommy Hilfiger Licensing, Inc. v. Nautical Apparel Inc.,* 924 F. Supp. 17, 21 (S.D.N.Y. 1996) ("Paragraph (iv) [of 15 U.S.C. § 1116(d)(4)(B)] is identical to the standard used to grant a temporary restraining order or a preliminary injunction"). Here, as established in Section III.C. of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and a Preliminary Injunction, Plaintiffs will suffer immediate and irreparable harm if the requested relief is not granted.

15.    Moreover, Plaintiffs will suffer further irreparable harm if the requested seizure order is not entered because Defendants are highly likely to conceal, destroy, or move evidence, thereby preventing Plaintiffs from learning the full extent of Defendants' counterfeiting activities.

### 5.   The Matter to be Seized Will be Located at the Place Identified in the Motion (15 U.S.C. § 1116(d)(4)(B)(v))

16.     Plaintiffs have identified with specificity in the proposed Order at ¶¶7-8 the items and records to be seized and the place where they are to be found, i.e., Defendant Vazquez's home address, 11605 S.W. 99th Court, Miami, Florida 33126.

17.     Plaintiffs anticipate that the bulk of the records responsive to the proposed seizure order will include electronic data files. Rather than impose that burden of seizing this data on law enforcement personnel, Plaintiffs propose that an expert, highly trained and skilled in computer data forensics, be present at the seizure to conduct the technical data retrieval. Plaintiffs submit to this Court the qualifications of Mr. Jeffrey E. Tuley with the forensic expert firm NetEvidence, Inc. Mr. Tuley is certified in computer forensic investigation. Mr. Tuley has already provided expert declarations to this Court in other cases.

18.     A district court has the power to issue a writ of assistance that compels third parties with technical skills to assist in the technical implementation of a court's order. *U.S. v. New York Tel. Co.,* 434 U.S. 159, 176 (1977) (holding valid district court order directing telephone company to provide federal law enforcement officials with facilities and technical assistance). The Court therefore approves the use of Mr. Tuley (the "Forensic Expert") to expedite and streamline the data retrieval part of the seizure.

### 6.   The Harm to Plaintiffs of Denying the Motion Outweighs the Harm to the Legitimate Interests, If Any, of Defendants (15 U.S.C. § 1116(d)(4)(B)(vi))

19.     Plaintiffs seek to preserve critical evidence for the prosecution of this action. This evidence is likely to be primarily in electronic form, within defendants' exclusive control, and subject to quick, easy, untraceable destruction. Defendants are highly likely to destroy the evidence or move it out of the country if the seizure is not made. Destruction or moving of the

8

evidence will greatly undermine Plaintiffs' ability to prosecute their case, and cause further irreparable harm to Plaintiffs.

20.     Defendants may suffer some harm from "down time" caused by the seizure. However, Plaintiffs will attempt to conduct the seizure without removing Defendants' computers and equipment from the premises to minimize any disruption to Defendants' business. Plaintiffs have retained outside, neutral, forensic data experts to lessen any possible harm to Defendants. Accordingly, the injury to Plaintiffs if the seizure order is denied will far outweigh the harm the seizure will cause Defendants.

> ### 7.     Defendants Are Likely to Destroy, Move, Hide or Otherwise Make Such Evidence Inaccessible to The Court if Plaintiffs Gave Notice to Defendants (15 U.S.C. § 1116(d)(4)(B)(vii))

21.     The elaborate nature of Defendants' scheme demonstrates that Defendants will go to great lengths to conceal their counterfeiting and cybersquatting scheme. Defendants have a history of concealing evidence by using numerous fictitious businesses, personal names, and shell entities to hide their activities. Moreover, Defendants' corporate manager Netrian Ventures Ltd. appears to be an offshore entity, and Defendants have used numerous shell entities, fictitious businesses, and personal names with offshore business addresses. As such, Defendants are likely to abscond offshore with their operation and their records or destroy their records if they receive notice. This is especially likely given the electronic nature of the evidence, which is subject to quick, easy, untraceable movement and destruction by Defendants.

### B.     Plaintiffs Have Complied With Other Requirements of the Trademark Counterfeiting Act

22.     The proposed Order submitted by Plaintiffs complies with 15 U.S.C. § 1116(d)(5) by providing: (A) proposed findings of fact and conclusions of law; (B) a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;

(C) the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made; (D) the amount of security required to be provided; and (E) a date for the hearing required under 15 U.S.C. § 1116(d)(10).  Plaintiffs also have notified the United States Attorney in this judicial district pursuant to 15 U.S.C. § 1116(d)(2).

**C.    Affirmative Relief of a Records Seizure Is Available in the Alternative Under the Lanham Act and State Law for Non-Counterfeit Trademark Infringement**

23.    The availability of the requested relief does not turn on Plaintiffs' counterfeiting claim.   Rather, all the requested relief may be granted in the alternative under the broad injunctive powers of the Lanham Act, 15 U.S.C. § 1114; the All Writs Act, 28 U.S.C. § 1651; and the inherent power of this Court to fashion equitable remedies.

24.    The passage of the Trademark Counterfeiting Act did not divest this Court of the bases on which it may grant relief overlapping or duplicating the relief authorized by the Act. "Even with the passage of Trademark Counterfeiting Act, seizures of counterfeit goods and documents based upon Fed. R. Civ. P. 65, the All Writs Act, under the injunctive provisions of the Lanham Act or [state] law are appropriate." *Pepe, Ltd. v. Ocean View Factory Outlet Corp.,* 770 F. Supp. 754, 759-60 (D.P.R. 1991) (passage of the Trademark Counterfeiting Act mean to expand, not restrict or pre-empt, existing trademark enforcement powers).  Seizures predate the enactment of the Trademark Counterfeiting Act. *See, e.g., In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979).

25.    Such seizures outside the scope of the Trademark Counterfeiting Act are also available and appropriate in cases of infringement of registered or unregistered trademarks, even if those infringements do not rise to the level of counterfeiting. *See id.*  Further, the United States Supreme Court has "repeatedly recognized the power of a federal court to issue such

10

commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *New York. Tel. Co.* 434 U.S. at 172.

**D.** **The Court ~~Should~~ Order Accelerated Discovery To Allow Plaintiffs To Ascertain The Identities Of All Persons Engaged In Defendants' Scheme So They Can Be Named As Parties.**

26.     Plaintiffs seek accelerated pretrial discovery to ascertain the true identities of the parties involved in Defendants' operations and the scope of those operations.  The Court has discretion to order accelerated discovery in appropriate cases.  The Federal Rules of Civil Procedure provide that parties may not seek discovery prior to the Rule 26(f) scheduling conference, except when authorized by Court order.  Fed. R. Civ. P. 26(d).

27.     Courts have adopted a good cause or reasonableness standard for granting expedited discovery.  *Ayyash v. Bank Al-Madina*, 223 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting ex parte expedited discovery from third parties where plaintiff showed good cause); *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying a good cause standard to plaintiff's request for expedited discovery); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.,* 204 F.R.D. 675, 676 (D. Colo. 2002) (applying a good cause standard to plaintiff's request for expedited discovery).  The *Ayyash* court found good cause when the plaintiff showed that the "defendants are foreign individuals and corporations who have both incentive and capacity to hide their assets." *Ayyash*, 223 F.R.D. at 327.

28.     Accelerated discovery is specifically contemplated by 15 U.S.C. § 1116(d)(10)(B) of the Trademark Counterfeiting Act, which states "[i]n connection with a [seizure order] hearing . . . the court may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing." Courts have recognized that accelerated discovery may be particularly appropriate in cases of

trademark counterfeiting. "Expedited discovery should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time. Such prejudice is frequently the case where a well-known trademark, such as plaintiffs here, has been counterfeited and the sources or purchasers of the counterfeit products are unknown to plaintiff." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 250 (S.D. Fla. 1982) (internal citation omitted).

29.     The circumstances of this case constitute good cause for accelerated discovery against Defendants and certain third parties.

**E.     The File in this Action ~~Should~~ be Temporarily Sealed to Ensure the Court's Seizure Order Can Be Effectively Implemented**

30.     If Defendants receive advance word of this Motion, they will likely destroy evidence or move it out of the jurisdiction. The Court therefore finds that all papers filed in this action should be sealed and not made publicly available until the hearing set by the Court. Sealing such papers is also required by the Trademark Counterfeiting Act for the Defendants' protection. *See* 15 U.S.C. § 1116(d)(8).

**F.     A Bond, If Required At All, Should Be Minimal**

31.     Defendants have no legitimate business interests in trademark counterfeiting and its customer-diversion scheme. Moreover, this Court's order can likely be carried out with only a temporary and limited effect on Defendants' business operations, and Plaintiffs have complied with all the procedural requirements of the Federal Counterfeiting Act. For the brief period from now until the confirming hearing in ten to fifteen days, Defendants' losses from being unable to counterfeit and infringe Plaintiff's Marks will be *de minimus*. The Court therefore believes that if a bond is necessary, an amount of ~~$10,000~~ is sufficient.

$ 25,000

12

Based on the foregoing Findings of Fact and Conclusions of Law.  **IT IS HEREBY ORDERED AND ADJUDGED:**

1.     Plaintiffs' *ex parte* motion for seizure of Defendants' counterfeiting items and records is **GRANTED**.

2.     Plaintiffs' *ex parte* motion for order of seizure of Defendants' trademark infringing items and records on the alternative grounds of the Lanham Act, Florida state law, and this Court's inherent equitable powers is **GRANTED**.

3.     Plaintiffs' *ex parte* motion for accelerated discovery is **GRANTED**.

4.     Plaintiffs' *ex parte* motion to seal the file is **GRANTED**.



5.   ~~Defendants shall be given no notice of Plaintiffs' motion or of this Action until they are served with this Order by law enforcement officials.~~

For the **SEIZURE ORDER**, it is further **ORDERED AND ADJUDGED**:

6.     A United States Marshal, other federal law enforcement officer, or Florida state or local law enforcement official (the "Seizing Officer") shall affect the Seizure not later than seven days after the date of issue of this Order.  The Seizure may continue from day to day, for a period not to exceed ~~seven~~ three days, until all items and records have been seized.  The following items shall be seized: all documents, papers, things (including, but not limited to, computers, servers, and pdas), records, data, and information, and electronic media relating to the selection, registration, use, trafficking in, monetizing, release, transfer, assignment, renewal, maintenance, and deletion of the domain names listed in Paragraph 122 of Plaintiffs' Complaint ("Confusingly Similar Domain Names"), and relating to the coordination among various Defendants and their shell entities, fictitious businesses, and personal names and others for such activities.

13

7.     The seizure shall take place at 11605 S.W. 99th Court, Miami, Florida 33126 and at such appurtenant, contiguous or nearby suites, areas or facilities as may contain items subject to seizure, and also including without limitation equipment areas such as equipment bays or closets.

8.     The Seizing Officer may be accompanied during the Seizure onto any premises where the Seizure is occurring (each, a "Seizure Premises") by: (A) such additional law enforcement personnel as the Seizing Officer, in consultation with counsel for Plaintiffs, deems necessary or advisable to carry out the seizure or secure any Seizure Premises; (B) one or more outside counsel for Plaintiffs ("Outside Counsel"), along with any necessary or advisable assistants and support staff for Outside Counsel, including a copy service and a videographer; and (C) the Forensic Expert, along with any necessary or advisable assistants and support staff for the Forensic Expert.  The Seizing Officer shall confer and cooperate with Outside Counsel and the Forensic Expert to ensure that all Seizure Items are properly identified and seized.

9.     The Seizing Officer, Outside Counsel, the Forensic Expert, and their respective assistants and support staffs (collectively, the "Seizure Personnel") may bring such equipment onto the Seizure Premises as may be advisable and necessary to carry out the seizure, including but not limited to computers, other data processing equipment, copy machines, video cameras, and digital still cameras.  The Seizing Officer, Outside Counsel, and the Forensic Expert may use facilities at the Seizure Premises to make any necessary connections to such equipment, including but not limited to data and power connections.

10.     The cost of the Forensic Expert shall be borne by Plaintiffs, provided, however that this cost allocation is without prejudice to any cost- or fee-shifting that may later occur by action of law or by order of this Court.

11.     The Forensic Expert, in consultation with Outside Counsel and the Seizing Officer, shall determine whether to effect the seizure by (A) physically removing computers and/or data processing and/or other equipment (collectively, the "Seized Data Equipment") from the Seizure Premises; (B) by removing information and data from the Seized Data Equipment, whether by inspection, analysis, copying, imaging, manipulation of media, or otherwise; or (C) by some combination of (A) and (B).

12.     Outside Counsel, in consultation with the Seizing Officer, shall determine whether to effect the seizure by physically removing documents, photographs, or other items from the Seizure Premises in order to photocopy these items.

13.     Upon demand by the Forensic Expert during the Seizure or after the seizure and prior to the Confirmation/Preliminary Injunction Hearing, Defendants shall provide all passwords and other access devices or information necessary to access information and data on or removed from the Seized Data Equipment or from any media. *Defendants are cautioned* that they will be sanctioned for any refusal to make such provision, including without limitation for the expense of any work of the Forensic Expert or other personnel made necessary by such refusal.

14.     The Seizure Personnel may ~~photograph and~~ obtain, including without limitation by audio recording, still photography, photocopying or videography, such other data, information, documents or evidence from the Seizure Premises as they may deem necessary or advisable.

15.     All materials seized shall be taken into the custody of the Court.  The Court hereby appoints the Forensic Expert as temporary custodian of the materials seized, pending the Confirmation/Preliminary Injunction Hearing.  Within 2 days of the date the seizure is completed, the Forensic Expert shall provide to the Court and to Defendants an inventory of items, property, and other things seized.

16.     Outside counsel for Plaintiffs may obtain from the Forensic Expert in advance of the Confirmation/Preliminary Injunction Hearing any data or information obtained from the Seized Data Equipment.  Defendants or their counsel may, at their own expense, obtain from the Forensic Expert at the same time or thereafter a copy of data or information given to outside counsel for Plaintiff or obtained from the Seized Data Equipment. *

17.     Outside counsel for Plaintiffs shall treat the Seizure Items and all information derived therefrom (collectively, the "Seized Information") as confidential, and shall not share the Seized  Information with Plaintiffs, except that outside counsel may share the Seized Information with Plaintiffs' inside counsel who are involved in managing or overseeing this litigation. Outside counsel for Plaintiffs may render advice to Plaintiffs and base such advice generally on the Seized Information; however, in rendering such advice and otherwise communicating with clients, outside counsel for Plaintiffs shall not make specific disclosure of such Seized Information except to Plaintiffs' in-house counsel as permitted by this provision. *In-house counsel shall not disclose the Seized Information to Plaintiffs' officers, employees, or agents*

18.     Plaintiffs and their agents and attorneys shall not publicize and shall not cause to *without a court order.* be publicized this Order or the fact or details of the Seizure.

For the **ORDER ACCELERATEING DISCOVERY**, it is further **ORDERED AND ADJUDGED**:

19.     In order to enable Plaintiffs to prepare for the hearing on the seizure required by 15 U.S.C. § 1116(d)(10)(A), Plaintiffs are entitled to accelerated discovery against Defendants and third parties.  Accordingly, Plaintiffs may immediately serve upon Defendants: (a) document requests and interrogatories in the form attached hereto as Exhibit 1; (b) additional document requests and interrogatories relating to the identify of other parties or affiliates who may be

*16 Defendants may also obtain from the Forensic Expert, at their expense, a copy of data or information obtained from the Seized Data Equipment, even if not provided to Plaintiffs' counsel.*

involved in Defendants' domain name and website activities and the scope of those activities; and (3) notices of deposition pertaining to the identity of other parties or affiliates who may be involved in Defendants' domain name and website activities and the scope of those activities. Defendants are required to respond to interrogatories within ~~three (3)~~ Four (4) business days after service of the interrogatories. Defendants must appear for depositions within five (5) business days of service of the notice of the deposition. To the extent not already seized, Defendants shall not refuse to produce documents, except for a *bona fide* claim of privilege. In addition, Defendants shall not refuse to respond to interrogatories or provide testimony, except for a *bona fide* claim of privilege.

20.     If the seizure at 11605 SW 99 Court, Miami, Florida 33126 does not result in the seizure of all of the computers, servers, pdas, and/or other equipment, devices, or things that house the electronic records or data relating to the selection, registration, use, trafficking in, monetizing, release, transfer, assignment, renewal, maintenance, and/or deletion of the Confusingly Similar Domain Names, and coordination among various Defendant entities and others for such activities, then Defendants are hereby ordered to produce to Plaintiffs or make available for inspection at a mutually agreeable place within ~~three (3)~~ Four (4) business days after the date of the seizure all such computers, servers, pdas, equipment, and things, at which time Plaintiffs can remove information and data from such equipment, whether by inspection, analysis, copying, imaging, manipulation of media, or otherwise.

21.     Plaintiffs may immediately serve a document production subpoena upon Google, Inc. relating to the scope of Defendants' operations and business dealings between any Defendant, or their affiliates, and Google, Inc. and its affiliates. Such subpoenas shall not, without the consent of Google, Inc., be returnable in less than five business days.

17

22.    Plaintiffs may immediately serve a document production subpoena upon the Internet Corporation for Assigned Names and Numbers ("ICANN") relating to the Defendants' registrar accreditations and/or otherwise relating to Defendants and their day-to-day operations, including dealings with Defendant Vasquez, which may assist Plaintiffs in identifying additional Defendants or relevant evidence. Such subpoenas shall not, without the consent of ICANN, be returnable in less than five business days.

23.    Plaintiffs may immediately serve a document production subpoena upon InterServer, Inc. relating Defendants' operations and business dealings between any Defendant, or their affiliates, and InterServer, Inc.   Such subpoenas shall not, without the consent of InterServer, Inc. be returnable in less than five business days.

24.    Plaintiffs may immediately serve a document production subpoena upon Dotster, Inc. relating to Defendants' operations and business dealings between any Defendant, or their affiliates, and Dotster, Inc.   Such subpoenas shall not, without the consent of Dotster, Inc. be returnable in less than five business days.

25.    Plaintiffs may immediately serve a document production subpoena upon Internap Services relating to Defendants' operations and business dealings between any Defendant, or their affiliates, and Internap Services. Such subpoenas shall not, without the consent of Internap Services be returnable in less than five business days.

26.    The foregoing discovery shall not count toward the discovery limits in Federal Rule of Civil Procedure 30(a)(2).   The foregoing discovery shall be conducted under the Protective Order attached hereto as Exhibit 2, which has been entered by the Court.

For the **ORDER SEALING FILE**, it is further **ORDERED AND ADJUDGED**:

27. The file in this Action shall be and remain sealed until service upon named Defendants by the Seizing Officer.

28. Pursuant to 15 U.S.C. § 1116(d)(8), the file in this Action shall further remain sealed until the Confirmation Hearing, except that it shall be available to named Defendants after service by the Seizing Officer.

It is further **ORDERED AND ADJUDGED**:

29. The Court will hold a Confirmation Hearing on ___November 16, 2007___ at ___1:30___ pm___ .m. in Courtroom ___8___ at ___U.S. Courthouse  301 N. Miami Ave.  8th Floor___, which date is not less than ten days nor more than fifteen days from the date of issue of this Order. Plaintiffs shall at that hearing have the burden of providing that the facts supporting the Findings of Fact and Conclusions of Law necessary to support the Seizure Order are still in effect. If Plaintiffs fail to meet that burden, the Seizure Order shall be dissolved or modified appropriately.

30. At the Confirmation Hearing, the Court will also consider entry of a protective order regarding confidentiality, lifting the confidentiality restrictions imposed herein on outside counsel for Plaintiffs, lifting the publicity restrictions imposed herein on Plaintiffs, and unsealing the file in this Action.

31. Plaintiffs and Defendants may, no later than two business days in advance of the Confirmation Hearing, serve on the opposing side by CM/ECF, electronic mail, facsimile, or hand delivery and file with this Court, a single brief per side pertaining to the issues to be considered at the hearing.

32. Plaintiffs shall, no later than two business days in advance of the Confirmation Hearing, lodge a proposed form of a protective order regarding confidentiality, of the type

contemplated by Federal Rule of Civil Procedure 2(c)(7).  Defendants at their option may also, no later than two business days in advance of the Confirmation Hearing, lodge their own proposed form of such protective order.

33.    Plaintiffs shall post a cash or corporate surety bond, in the amount of _____ _____ twenty-five thousand _____ ($ 25,000 _____ ) as security, this Court having determined that such amount is adequate for the payment of such damages as Defendants may be entitled to recover as a result of this Order and the orders herein.

—OR—

[ ] Plaintiffs shall not be required to post a bond

This Order is issued this 2nd day of October, 2007, at the hour of ____10:15___ a .m.
November, 2007

_____
UNITED STATES DISTRICT JUDGE

cc:  Copies to Counsel for Plaintiffs

# EXHIBIT
# 1

**FILE *EX PARTE* UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - Civ-

DELL INC.; AND ALIENWARE CORPORATION,

        Plaintiffs,

    vs.

BELGIUMDOMAINS, LLC; CAPITOLDOMAINS,
LLC; DOMAINDOORMAN, LLC; NETRIAN
VENTURES LTD.; IHOLDINGS.COM, INC.;
JUAN PABLO VAZQUEZ a/k/a JP VAZQUEZ, an
individual; and DOES 1-10;

        Defendants.

_____

**PLAINTIFF DELL'S NOTICE OF SERVICE OF FIRST SET OF
INTERROGATORIES TO DEFENDANT BELGIUMDOMAINS, LLC**

    Plaintiff Dell Inc. ("Dell") gives notice of service of its First Set of Interrogatories to

Defendant BelgiumDomains, LLC, to be answered under oath, on or before three business days

of this service, pursuant to the court order granting Dell's motion for expedited discovery.

Dated: _____      By: _____

Mimi L. Sall (Florida Bar No. 436704)
E-mail: msall@swmwas.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
200 East Las Olas Boulevard, Suite 2100
Fort Lauderdale, Florida 33301
Tel: (954) 462-9575
Fax: (954) 462-9567

David J. Steele (pro hac vice pending)
Email: david.steele@cph.com
CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road
Suite 6000 - North Tower
Newport Beach, CA 92660
Tel.: 949-476-0757
Fax: 949-476-8640

Howard A. Kroll (pro hac vice pending)
Email: howard.kroll@cph.com
CHRISTIE, PARKER & HALE, LLP
350 West Colorado Boulevard, Suite 500
Pasadena, CA 91105
Tel.: 626-795-9900
Fax: 626-577-8800

Attorneys for Plaintiffs DELL INC. AND
ALIENWARE CORPORATION

## **DEFINITIONS AND INSTRUCTIONS**

Unless specifically indicated, or otherwise required by the context in which the terms and names are used, the following definitions shall apply:

A.     "BELGIUMDOMAINS" shall mean BelgiumDomains, LLC and any and all past and present domestic or foreign parent, subsidiary, division, department, sister or affiliate, partner or partnership, predecessor- or successor-in-interest, corporate subunit or other business entity (including joint ventures with other natural persons, corporations, partnerships, or other business entities) of BelgiumDomains, LLC.

B.     These interrogatories call for all information that is known or available to BELGIUMDOMAINS, including all information in the possession of or available to BELGIUMDOMAINS' attorneys, agents, or representatives, or any investigators or any other person acting on BELGIUMDOMAINS' behalf or under BELGIUMDOMAINS' direction or control or that of BELGIUMDOMAINS' attorneys or agents.

C.     If BELGIUMDOMAINS cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to the full extent possible, answer such interrogatory to the full extent possible, specify the portion of such interrogatory that BELGIUMDOMAINS claims it is unable to answer fully and completely, state the facts upon which it relies to support its contention that BELGIUMDOMAINS is unable to answer that interrogatory fully and completely, and state what knowledge, information and belief that BELGIUMDOMAINS has concerning the unanswered portion of each such interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all physical locations where BELGIUMDOMAINS operates its business.

### INTERROGATORY NO. 2:

Identify all physical locations where the business or corporate records of BELGIUMDOMAINS are located

**INTERROGATORY NO. 3:**

Identify all physical locations where any computer hardware or software used or controlled by BELGIUMDOMAINS is located.

BELGIUMDOMAINS, LLC

By:_____

STATE OF _____)
                                    ) SS:
COUNTY OF _____)

BEFORE ME, personally appeared _____, as _____ of BelgiumDomains, LLC, who, upon being first duly sworn according to law, who is ☐ personally known to me or ☐ has presented _____ as identification, deposes and says that he or she executed the foregoing Answers to Interrogatories and the responses are true and correct to the best of his or her knowledge and belief.

Sworn to and subscribed before me this _____ day of _____, 2007.

_____
Print or Stamp Name:_____
Notary Public State of Florida at Large
Commission No._____
My Commission Expires:

I:\W-LIT\05812 (Dell)\001\DISCOVERY\Dell's 1st Interrogatory to BelgiumDomains.doc

6

**FILE *EX PARTE* UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - Civ-

DELL INC.; AND ALIENWARE CORPORATION,

      Plaintiffs,

   vs.

BELGIUMDOMAINS, LLC; CAPITOLDOMAINS,
LLC; DOMAINDOORMAN, LLC; NETRIAN
VENTURES LTD.; IHOLDINGS.COM, INC.;
JUAN PABLO VAZQUEZ a/k/a JP VAZQUEZ, an
individual; and DOES 1-10;

      Defendants.

---

**DELL INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS,
ELECTRONICALLY STORED INFORMATION, AND THINGS TO
BELGIUMDOMAINS, LLC (NOS. 1 - 16)**

Dell Inc. ("Dell") requests that BelgiumDomains, LLC provide a written response and

produce for inspection and copying each document, electronically stored information, and

tangible thing in its possession, custody or control requested below, in accordance with Rule 34

of the Federal Rules of Civil Procedure. Dell requests that documents, electronically stored

information, and things be made available for inspection and copying at the offices of Stearns

Weaver Miller Weissler Alhadeff & Sitterson, P.A., New River Center - Suite 2100, 200 East

Las Olas Boulevard, Fort Lauderdale, Florida 33301, or at another location mutually agreeable to

the parties, on or before five business days of this service in accordance with this Court's Order.

## **DEFINITIONS**

Unless specifically indicated, or otherwise required by the context in which the terms and names are used, the following definitions shall apply:

A.      "DOCUMENTS" shall include any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, including electronically stored information.

B.      "BELGIUMDOMAINS" shall mean BelgiumDomains, LLC and any and all past and present domestic or foreign parent, subsidiary, division, department, sister or affiliate, partner or partnership, predecessor- or successor-in-interest, corporate subunit or other business entity (including joint ventures with other natural persons, corporations, partnerships, or other business entities) of BelgiumDomains, LLC.

C.      "NAMED DEFENDANTS" shall mean BELGIUMDOMAINS, CapitolDomains, LLC, DomainDoorman, LLC, Netrian Ventures Ltd., iHoldings.com, Inc., Juan Pablo Vazquez a/k/a JP Vazquez, and any and all past and present domestic or foreign parent, subsidiary, division, department, sister or affiliate, partner or partnership, predecessor- or successor-in-interest, corporate subunit or other business entity (including joint ventures with other natural persons, corporations, partnerships, or other business entities) of any of these entities or persons.

D.      "REGISTER," "REGISTERED," or "REGISTRATION" shall mean the registration, or renewal of a registration, of a domain name for any length of time.

E.      "REGISTRANT" shall mean the entity that owns the domain name, holds the domain name registration, or controls the use of a domain name for any length of time.

F.     "TRAFFICS IN," or "TRAFFICKING IN" shall mean transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

G.     "MONETIZATION" shall mean hosting websites using a domain name that displays HTML links containing advertisements or that displays pop-up and pop-under advertisements.

H.     "UNASI IDENTITIES" shall mean the following persons or entities: Caribbean Online International Ltd.; Domain Drop S.A.; Keyword Marketing, Inc.; Maison Tropicale S.A.; Marketing Total S.A.; Click Cons. Ltd; Web Advertising, Corp; Wan-Fu China, Ltd.; Domibot; Highlands a/k/a Highlands International Investment Ltd. a/k/a Highland International Investment; DomainCollection.com; Alvaro Collazo; Juan Carlos Linardi; Unasi (or Unaci) Management or simply "Unasi" or "Unaci;" Domaincar; J. Lee; Wang Lee Domains Ltd; International Names Ltd.; Pertshire Marketing, Ltd; Cambridge a/k/a Cambridge Capital Ltd. a/k/a Cambridge Capital Investment Ltd.; Coventry Investments Ltd.; and any and all past and present domestic or foreign parent, subsidiary, division, department, sister or affiliate, partner or partnership, predecessor- or successor-in-interest, corporate subunit or other business entity (including joint ventures with other natural persons, corporations, partnerships, or other business entities) of any of the UNASI IDENTITIES.

I.     "UNASI IDENTITY" shall mean any one of the UNASI IDENTITIES.

J.     The term "INFRINGING DOMAIN NAMES" shall mean the domain names identified in Exhibit 1.

## INSTRUCTIONS

The following instructions apply to the discovery requests below and should be considered as part of each such request:

1.     BELGIUMDOMAINS shall produce requested documents or electronically stored information— including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained.

2.     As required by Rule 34(b) of the Federal Rules of Civil Procedure, please produce all requested documents as they are kept in the usual course of business or organize and label them to correspond to the categories in this request.

3.     For those produced documents that require other documents to render the produced documents either comprehensible or not misleading, produce all such other documents.

4.     If BELGIUMDOMAINS withholds from production any of the requested documents or things on the grounds that it is privileged or subject to protection as trial preparation material, then, in accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure, please provide, within thirty days of service of this request, the following information as to each of the documents and things withheld.

(1)     the name and title or capacity of its author or originator;

(2)     the name and title of capacity of every person who received it;

(3)     the relationship between the author or originator and each person who received the withheld document or thing;

(4)     whether the primary purpose of the withheld document or thing or any underlying communication was to seek or provide legal advice or services;

4

(5)     the date of the withheld document or things;

(6)     each subject matter addressed in it;

(7)     whether the withheld document or thing was transmitted in confidence; and

(8)     all privileges or other objections asserted as to the withheld document or thing.

5.     Unless you claim that the entirety of a document is privileged or protected from discovery by an immunity or the work product doctrine, produce the portions of the document that you do not claim are privileged or protected from discovery by an immunity or the work product doctrine and log the redactions in accordance with the provisions of paragraph 4 above.

6.     All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each document and thing produced in response hereto, identify the request for production in response to which the document or thing is being produced.

7.     Electronic documents produced pursuant to these Requests are to be produced in their native electronic format.

8.     These requests seek all responsive documents in their original language and, if such original language is not English, these requests also seek all English-language translations that may exist for such documents.

9.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

10.     The words "and" and "or" should be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be outside its scope.

11.     The terms "any," "each," "all," and "every" shall be construed wherever necessary to bring within the scope of this request any information that might otherwise be construed to be outside its scope.

12.     If you object to any subpart or portion of a request for production or object to providing certain information requested, state the objection and supply the unobjectionable information requested.

13.     If any of the following requests for information cannot be responded to in full and after exercising reasonable diligence to secure the information, please so state, supply the information for those portions you are able to, and supply whatever information you have concerning the portion of the request which cannot be answered in full.  If your response is qualified in any particular respect, set forth the details of such qualification.

14.     No request for a particular item or category should be construed as a limitation on any other part of this request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All documents referring or relating in any way to the INFRINGING DOMAIN NAMES.

**REQUEST FOR PRODUCTION NO. 2:**

All documents relating to the REGISTRATION and ownership of each domain name for which any NAMED DEFENDANT has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to the REGISTRATION and ownership of each domain name for which any UNASI IDENTITY has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to the TRAFFICKING IN each domain name for which any NAMED DEFENDANT has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to the TRAFFICKING IN each domain name for which any UNASI IDENTITY has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to the MONETIZATION of each domain for which any NAMED DEFENDANT has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 7:**

All documents referring or relating to the MONETIZATION of each domain name for which any UNASI IDENTITY has been identified as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 8:**

All contracts, agreements, and correspondence in any form between any of the NAMED DEFENDANTS and any advertisers, aggregators, search engines, or affiliate programs for the MONETIZATION of domain names.

**REQUEST FOR PRODUCTION NO. 9:**

The articles of incorporation, by-laws, annual reports, and financial statements of BELGIUMDOMAINS.

**REQUEST FOR PRODUCTION NO. 10:**

All contracts and agreements in any form between any of the NAMED DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 11:**

All communications, contracts, and agreements between any of the NAMED DEFENDANTS and any UNASI IDENTITY.

**REQUEST FOR PRODUCTION NO. 12:**

All documents identifying any current or former representatives, agents, employees, officers, directors, shareholders, or owners of BELGIUMDOMAINS.

**REQUEST FOR PRODUCTION NO. 13:**

All communications, contracts, and agreements in any form between BELGIUMDOMAINS and its current or former representatives, agents, employees, officers, directors, shareholders, or owners.

8

**REQUEST FOR PRODUCTION NO. 14:**

All documents containing any contact information or whois data (e.g., legal names, fictitious names, business names, phone numbers, fax numbers, physical addresses, and email addresses) for any of the NAMED DEFENDANTS including, but not limited to, all contact information and whois data provided by any of the NAMED DEFENDANTS for each domain name that it has ever REGISTERED as the REGISTRANT.

**REQUEST FOR PRODUCTION NO. 15:**

All documents containing any contact information or whois data (e.g., legal names, fictitious names, business names, phone numbers, fax numbers, physical addresses, and email addresses) for any UNASI IDENTITY including, but not limited to, all contact information and whois data provided by any UNASI IDENTITY for each domain name that it has ever REGISTERED.

**REQUEST FOR PRODUCTION NO. 16:**

All documents identifying the banks or financial institutions used by any of the NAMED DEFENDANTS or by any of the UNASI IDENTITIES.

Dated: _____     By: _____

    Mimi L. Sall (Florida Bar No. 436704)
    E-mail: msall@swmwas.com
    STEARNS WEAVER MILLER WEISSLER
    ALHADEFF & SITTERSON, P.A.
    200 East Las Olas Boulevard, Suite 2100
    Fort Lauderdale, Florida  33301
    Tel: (954) 462-9575
    Fax: (954) 462-9567

    David J. Steele (pro hac vice pending)
    Email: david.steele@cph.com
    CHRISTIE, PARKER & HALE, LLP
    3501 Jamboree Road
    Suite 6000 - North Tower
    Newport Beach, CA  92660
    Tel.: 949-476-0757
    Fax: 949-476-8640

    Howard A. Kroll (pro hac vice pending)
    Email: howard.kroll@cph.com
    CHRISTIE, PARKER & HALE, LLP
    350 West Colorado Boulevard, Suite 500
    Pasadena, CA 91105
    Tel.: 626-795-9900
    Fax: 626-577-8800

    Attorneys for Plaintiffs DELL INC. AND
    ALIENWARE CORPORATION

I:\W-LIT\05812 (Dell)\001\DISCOVERY\Dell's RFP to BelgiumDomains.doc

# EXHIBIT
# 2

FILE *EX PARTE* UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ - Civ-

DELL INC.; AND ALIENWARE CORPORATION,

        Plaintiffs,

   vs.

BELGIUMDOMAINS, LLC; CAPITOLDOMAINS,
LLC; DOMAINDOORMAN, LLC; NETRIAN
VENTURES LTD.; IHOLDINGS.COM, INC.;
JUAN PABLO VAZQUEZ a/k/a JP VAZQUEZ, an
individual; and DOES 1-10;

        Defendants.

---

## PROTECTIVE ORDER
## REGARDING CONFIDENTIAL INFORMATION

WHEREAS, certain documents, information and tangible objects produced through

expedited discovery in this proceeding may contain trade secrets or other confidential research,

development, or commercial information, the public disclosure of which would cause injury;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    This Order governs the treatment of documents[1] and things, transcripts of and

exhibits to depositions, interrogatory answers, responses to requests for admissions, and other

written, recorded, or graphic material, including all copies, excerpts, abstracts, or summaries

thereof (collectively, "Discovery Material"), produced, filed with the Court, served, or obtained

---

[1] The term "document" as used herein shall include any "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained" and also includes electronically stored information. *See* Federal Rules of Civil Procedure 34(a).

by or from any party or non-party in this action (collectively, "Person(s)") within 30 days after entry of this Order.

2.     All Discovery Material produced by any Person through expedited discovery within 30 days of entry of this Order shall be treated and designated as "CONFIDENTIAL."

3.     All Discovery Material described in Paragraph 2 and designated as "CONFIDENTIAL" and all information derived therefrom shall be referred to in this Order as "Designated Material" and shall be handled in strict accordance with the terms of this Order. Specifically, absent an order by this Court, such Designated Material shall be used by the parties to this action solely in connection with this action or any appeal therefrom, and not for any business, competitive, or governmental purpose or function, and such Designated Material shall not be disclosed to anyone except as provided herein. Designated Material may be disclosed only under the circumstances and to the persons specifically provided for in this Order or any subsequent Court order, or with the explicit written consent of the designating Person with respect to specifically identified Designated Material.

4.     Designated Material may be disclosed, shown, or made available, or communicated in any way only to the following persons:

a.     attorneys for the parties to this litigation, including persons working in secretarial, clerical, and paralegal capacities, and who are providing assistance to counsel in this action, and including the in-house counsel for the parties who are involved in the litigation;

b.     qualified persons taking testimony involving Designated Material, and necessary stenographic, videographic, and clerical personnel thereof;

2

c.     consultants or experts and their staff who are employed for the purposes of this litigation, provided that the provisions of Paragraph 7 of this Order are complied with prior to any disclosure of any Designated Material to such an expert or consultant;

d.     the Court and the Court's staff, but only as set forth in Paragraph 10 of this Order;

e.     third parties specifically retained to assist outside counsel in copying, imaging, and/or coding of documents, provided that all such confidential documents are kept and maintained in a secure place;

f.     witnesses deposed in this action or who are called as witnesses at any hearing in this action, but only as set forth in Paragraph 11 of this Order.

5.     All Discovery Material produced within 30 days of this Order shall be marked or stamped "CONFIDENTIAL" by the producing party or non-party. If any Defendant or any non-party fails to mark or stamp such Discovery Material "CONFIDENTIAL," Plaintiffs shall mark or stamp such material "CONFIDENTIAL" before disclosing them pursuant to Paragraphs 4, 10, and 11 of this Order.

6.     Deposition testimony will be classified as Designated Material by indicating on the record at the deposition that the examination or testimony discloses Designated Material under the terms of this Order. The portions of the original deposition transcript and any exhibits designated confidential, and all copies thereto shall be prominently marked with the appropriate designation on the cover thereof.

7.     Persons described in Paragraph 4(c) of this Order shall be informed of and agree to be bound by the terms of this Order, shall sign a written acknowledgment, substantially in the

form of Exhibit 1 annexed hereto, and shall take all necessary precautions to prevent any disclosure or use of Designated Material other than as authorized by this Order.

8.     Individuals who are authorized to review Designated Material pursuant to this Order shall hold the Designated Material and its contents in confidence and shall not divulge the Designated Material or its contents, either verbally or in writing, except as expressly permitted by this Order, unless authorized to do so by a further Order of this Court or as specifically required by law.

9.     All Designated Material shall be kept in a secure place, and access to that place shall be permitted only to those persons set forth in Paragraph 4 of this Order.

10.     Designated Material where filed with the Court as part of any pleading or as evidence, shall be delivered sealed to the Clerk of the Court and shall not be available to public inspections. Envelopes used to seal such documents shall carry the notation: "CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER," and shall specify that the information contained within is "CONFIDENTIAL" and whose confidential information is contained therein.

11.     Witnesses deposed in this action or who are called as witnesses at any hearing in this action may be shown Designated Material by an attorney but only (1) in preparation for the deposition or hearing, or (2) during the deposition or hearing, and only under the following circumstances:

a.     any witness may be shown Designated Material in which the witness is identified as a originator, signatory, author, addressee, or recipient of the original or a copy;

b.     a current officer, director, or employee of a designating Person may be shown that party's Designated Material;

4

c.      any witness selected by a designating Person to provide testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure may be shown that party's Designated Material;

d.      a former officer, director, or employee of a designating Person may be shown that party's Designated Material if it appears from the face of the Designated Material that the witness previously had access to the Designated Material while employed by the designating Person, provided that counsel making such disclosure shall inform the witness that the matter is confidential and may not be disclosed or used except as provided in this Order.

e.      Any witness who fits the definitions set out in Paragraphs 4(a) and 4(c), if an Exhibit 1 Undertaking has been signed.

12.     If Designated Material is disclosed to any person other than in the manner authorized herein, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of all interested parties and the Court, and without prejudice to other rights and remedies of the designating party, and shall make every reasonable effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.     Notwithstanding any other provision of this Order to the contrary, the confidentiality obligations of this Order shall not apply or shall cease to apply to any information that:

a.      at the time of disclosure hereunder, was already in the public domain by publication or otherwise;

5

b. since the time of disclosure hereunder, has become, through no act or failure on the part of the receiving party, part of the public domain by publication or otherwise;

c. at the time of disclosure, was already in the possession of the receiving party and was not acquired directly or indirectly from the designating Person or from any third party under obligation of confidence to the designating Person;

d. after disclosure hereunder, was acquired by the receiving party from a third party lawfully possessing the same and having no obligation to the designating Person hereunder; or,

e. the designating Person agrees may be disclosed to a third party under no obligation of confidentiality.

The party claiming that he or she is relieved of the obligations of this Order by operation of any of Paragraphs 13(a)-(d) shall have the burden of proving that any of the provisions of Paragraphs 13(a)-(d) apply.

14. After thirty days from entry of this Order, all Designated Material will be reevaluated by the producing party or non-party and, if necessary, such Designated Material will be redesignated pursuant to the terms of a new Protective Order to be entered into by the parties.

15. Upon the termination of this proceeding, this Order shall continue to be binding upon the parties hereto, and upon all persons to whom Designated Material has been disclosed or communicated, and this Court shall retain jurisdiction to enforce this Order.

16. Subject to final order of the Court upon completion of all matters relating to this case, within sixty (60) days after entry of any final and unappealable judgment in this litigation, any and all Discovery Material and all copies thereof shall be returned to the producing Person

I:\W-LIT\05812 (Dell)\001\PLEADINGS\Dell Protective Order-v2.doc